UNITED STATES, Appellee

v.

GEORGE LEANDER ALDRIDGE, Corporal,
U. S. Marine Corps, Appellant

2 USCMA 330, 8 CMR 130

CDR Raymond van Wolkenten, USN, for Appellant.

CDR E. L. McDonald, USN, and CDR F. LaMar Forshee, USN, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

Accused was convicted by special court-martial of several offenses—only one of which, larceny, in violation of the Uniform Code of Military Justice, Article 121, 50 USC § 715, is of moment here. The Judge Advocate General, United States Navy, has certified to this Court the following question:

"Whether the instructions to the court by the President with regard to Charge III, Violation of Article 121, were sufficient as a matter of law."

Additional assignments of error have been made by appellate defense counsel.

### II

Charge III, that now in question, alleged a violation of Article 121 of the Code, supra, in that the accused did "steal" specified sums of money from named individuals. In his instructions to the court with respect to the ingredients of larceny, the president stated that these were:

". . . That the accused wrongfully took, obtained, or withheld from the possession of the true owner or of any other person the property described in the specification; (b) that such property belonged to a certain person named or described; (c) that such property was of the value alleged, or of some value; and (d) the facts and circumstances of the case showing that the taking, obtaining, or with-holding [sic] by the accused was with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate the same to his own use or the use of any person other than the true owner. . . ."

The argument of defense—joined in by the Government—is that the president erred in including within his instructions the elements of what at common law constituted three distinct offenses: those of larceny, embezzlement, and a taking under false pretenses. The contention is that the instructions should have been tailored specifically to fit the theory of the Government's case and the evidence.

We observe at the outset that, in conformity with the form provided in the Manual for Courts-Martial, United States, 1951, the specification alleged merely that the accused did "steal" the sums thereafter enumerated, from the individuals named, in violation of Article 121 of the Code, supra. That Article provides that:

"(a) Any person subject to this code who wrongfully takes, obtains, or withholds, by any means whatever, from the possession of the true owner or of any other person any money, personal property, or articles of value of any kind—

(1) with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate the same to his own use or the use of any person other than the true owner, steals such property and is guilty of larceny . . . ."

An examination of the legislative history of Article 121 discloses that it was the clear intent of Congress to create the single offense of "larceny," and to abolish the technical distinctions theretofore existing among the crimes of larceny, embezzlement, and taking under false pretenses. Hearings before House Committee on Armed Services, 81st Congress, 1st Session, on H. R. 2498, at pages 815 and 1232. Thus, the

particular means of acquisition of the property became relatively unimportant, and the critical question in each case now is the intent with which the property in question is held by the accused. If the accused intended permanently to deprive or defraud the person entitled to possession of the property of its use and benefit, or if he intended permanently to appropriate the property to his own use, or to the use of one not entitled thereto, he has stolen it in law and is guilty of larceny. At first blush, it may appear that through the multiple use of the disjunctive, a number of variables are presented. However, closer scrutiny demonstrates that this is not in truth the case. In *all* situations, an intent *permanently* to deprive the owner of his property is required. Where the accused permanently appropriates another's goods to his own use, or to the use of one other than the true owner, quite clearly the first and ostensibly separate condition—that is, "with intent permanently to deprive," etc.—is satisfied. The only additional situation in which one might intend to deprive another of his property permanently, without appropriating it to his own or another's use, would be where he merely, if neutrally, retains it, destroys it, or expends it—if it is of an expendable nature. Manifestly, the essential distinction between the two possible situations is slight indeed—particularly from a practical point of view—and the disposition of the property established at the trial will in each case reveal the basic requisite of an intent permanently to deprive the owner of its use and benefit.

The concededly tortuous course of this analysis is, we think, rather due to the inartful wording of Article 121, supra, than to deficiencies in ourselves. However, we do not sit in judgment on the phrasing of Congressional intent. It is simply our task to interpret and apply that phrasing and to serve that intent. Basically, the Article in question requires proof of no more than two elements: (1) that the accused obtained possession of the property in question, of some value, (2) with an intent, then or thereafter conceived, permanently to deprive the true owner

**332**

of its use and benefit. The eclecticism expressed in the Article as to each of these elements is calculated merely to afford alternative means of establishing what we have discerned to be the essential and basic elements.

### III

This dissection brings into bold relief the distinction between the offense of larceny, proscribed in Article 121, and that of desertion delineated in Article 85 of the Code, 50 USC § 679. The latter Article spells out three very different offenses, to wit: desertion with intent to remain away permanently, desertion with intent to avoid hazardous duty, and desertion with intent to shirk important service—each involving a separate and distinct specific intent. United States v. Shull (No. 45), 2 CMR 83, decided February 18, 1952; United States v. Hemp (No. 290), 3 CMR 14, decided April 8, 1952. For that reason we have demanded that the law officers, in desertion cases, restrict their instructions on offense elements to the specific intent required in the crime charged. United States v. Russell L. Williams (No. 133), 2 CMR 92, decided February 21, 1952; United States v. Hemp, supra; United States v. Shepard (No. 343), 4 CMR 79, decided July 25, 1952; United States v. Johnson (No. 498), 4 CMR 128, decided August 7, 1952. Compare United States v. Jenkins (No. 238), 3 CMR 63, decided April 21, 1952; United States v. Moynihan (No. 278), 3 CMR 152, decided April 21, 1952; United States v. Boone (No. 320), 3 CMR 115, decided May 9, 1952.

No such precise instructional specificity need be required in the instance of the crime charged in the case at bar, for the reason that there is but one offense of larceny. By the president's instructions here—certainly no more inartful than the statute upon which they were based—the members of the court were required to find that accused had acquired possession of the sums of money specified, from the individuals named, and had intended permanently to deprive the rightful owners thereof. That is all that is demanded by the law. We, therefore, hold that there was no error

in the instructions of the president in this particular.

## IV

In United States v. Snyder (No. 409), 4 CMR 15, decided June 5, 1952, and elsewhere, we have recognized the need for such certainty in specifying an offense as is required to apprise the accused of the nature of the crime charged against him, and to provide him adequate protection against a second prosecution for the same offense. In view of what we have said in preceding portions of this opinion, is there danger that this necessary certainty is substantially lacking? We think not. A larceny specification will always furnish the accused with notice of the goods and victim involved, together with information as to time, place and value. In addition, he may know, of course, that it is alleged that he possessed the goods concerned with the requisite intent as to permanent deprivation of the owner. Beyond this lie mere matters of evidence. Certainly the disclosure of details of this nature prior to trial may never be demanded by one charged with crime in the courts of the civilian community. Through the pretrial investigation, a military accused may—in fact, almost always does—secure fully as many, if not more, of these than are customarily available to his civilian counterpart. Sight must not be lost of the fact that the prosecution of crime—military or civilian—is not a fox hunt, and that rather different ground rules should obtain. From the standpoint of protection from double jeopardy, it must be apparent that there are no dangers here. The allegations of the specification, together with the evidence of record, amply assure of this.

## V

The numerous assignments of error filed by the accused have been considered fully and found to be without merit.

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.