UNITED STATES, Appellee

v.

ANTHONY F. KRAWCZYK, Warrant Officer Junior Grade,
U. S. Air Force, Appellant

4 USCMA 255, 15 CMR 255

No. 3592

Decided May 7, 1954

D. J. Korkowski, Esq., Col A. W. Tolen, USAF, and Capt Daniel O'Leary, USAF, for Appellant.

Lt Col Harold Anderson, USAF, and Capt Giles J. McCarthy, USAF, for Appellee.

## Opinion of the Court

Paul W. Brosman, Judge:

The accused warrant officer was convicted by general court-martial, convened at Chanute Air Force Base, Illinois, under seven specifications alleging larceny, in violation of the Uniform Code of Military Justice, Article 121, 50 USC § 715. The findings and sentence were approved by the convening authority—and a board of review later affirmed this action. This Court is now confronted—through petition of the accused, as well as by certificate from The Judge Advocate General, United States Air Force—with the question of whether the issue of wrongful appropriation was reasonably raised by the evidence. It is undisputed that the accused received the funds he was charged with having stolen, and that thereafter this money was expended.

II

The first specification of larceny was

256

supported by Government evidence establishing that the accused had been entrusted by an enlisted man with the sum of $447.00 for safekeeping, and that he had not returned the money despite insistent demands. The accused testified that, for the purpose of protecting it, he had placed the money in an envelope within a strongbox at his home—but that his wife had departed, taking the strongbox with her, and had later used the money.

To sustain the remaining six specifications, the Government introduced compelling evidence to the effect that that the accused had been guilty of peculations from a hospital fund with which he had been entrusted. The prosecution also offered in evidence a statement made by the accused to the officer who conducted the pretrial investigation required by Article 32 of the Code, supra, 50 USC § 603. In this document the former admitted taking the money from the fund and spending it—but stated that he intended to replace it when he received certain mustering-out pay due him. The law officer instructed on larceny but did not charge on wrongful appropriation.

## III

The Government's evidence under each of the specifications reveals the commission of a crime which, in many jurisdictions, is termed embezzlement. In Article 121 of the Code, supra, this offense, together with that of securing property by false pretenses, has been fused into the generic offense of larceny. The purpose of Congress in taking this action was to eliminate the technical distinctions drawn historically between larceny, embezzlement, and false pretenses. United States v. Aldridge, 2 USCMA 330, 8 CMR 130; United States v. Buck, 3 USCMA 341, 12 CMR 97; United States v. Clements, 5 CMR 716. When embezzlement constituted an offense separate from larceny, it was held that one who converted to his own use the goods of another, entrusted to him, was guilty of embezzlement—this despite the presence of an intention at the time of the taking later to replace the property.

United States v. Mangum, 72 BR 397; United States v. Morrison, 28 BR 355; Note, 52 LRA (NS) 1013, 1018; United States v. Titus, 64 F Supp 55 (DC NJ); cf. United States v. Banning, 3 CMR 333, pet den 1 USCMA 708, 712; People v. Kaye, 295 NY 9, 64 NE2d 268; State v. Baxter, 89 Ohio St 269, 104 NE 331. Courts have frequently announced their refusal to sanction immorality and careless dealing on the part of fiduciaries, and their consequent unwillingness to authorize acquittal of embezzlement, although the fiduciary entertained at all times a purpose to return the misappropriated property. State v. Baxter, supra; State v. Duerksen, 8 Okla Crim 601, 129 Pac 881.

The contention is made that the military service should not countenance a lower standard of conduct on the part of its fiduciaries than that enforced in civilian courts, and that accordingly the custodian of another's money, who uses it for his private purposes, must be considered guilty of larceny—whatever his intent with respect to the property's return. Under this view, Article 121 of the Code simply redesignated embezzlement as larceny—and therefore, since an improper use of entrusted funds would have constituted embezzlement under prior law irrespective of an intention to return, so a showing of the same facts must constitute larceny under Article 121. Such a premise would produce the conclusion in the case at bar that—with conceivable qualifications concerning the first specification—no lesser included offense was raised by the evidence.

A similar argument was presented to an Air Force board of review in United States v. Clements, supra. There it was contended that, if the evidence under a charge of larceny shows that the accused obtained money by false pretenses, he must be found guilty of larceny under Article 121, and may not properly be convicted of mere wrongful appropriation. This argument was predicated on the circumstance that at common law an intention to return property obtained through the use of false pretenses was irrelevant to a determination of guilt of that offense. Of course, this position utilizes the reason-

ing that false pretenses equate to larceny and never to wrongful appropriation—with the result that, if the evidence shows the property of another to have been secured through the pretenses of the accused, he must be found guilty of larceny, although he intended subsequently to return the objects obtained through fraud.

The board of review—in rejecting this approach—emphasized the Congressional purpose reflected in Article 121's directive to the effect that one, who possesses only an "intent *temporarily* to deprive or defraud another person of the use and benefit of property," is guilty of wrongful appropriation, rather than of the more serious offense of larceny. (Emphasis supplied.) Indeed, the board might have added that to adopt the opposite view would involve a reversion to the technical distinctions between larceny, embezzlement and false pretenses which Congress so carefully had sought to remove. Of course, the scope of these offenses under former law must occasionally be examined, since no proscription is found in Article 121 as to conduct which would not previously have constituted one of the three crimes. United States v. Buck, supra. However, it does not become necessary, under our view, to determine as to any case an answer to the following question: into which of the three categories of crime embraced within Article 121 does the evidence before the court fall? Cf. United States v. Aldridge, supra.

Contrariwise, just such a determination would be necessary were we to decide that the presence of wrongful appropriation as an included offense turns on whether the evidence revealed, on the one hand, that which previously would have been considered embezzlement or false pretenses, or on the other, misconduct which earlier would have been termed larceny. We must mention a further consideration as we discard the view that, when either "embezzlement" or "false pretenses" is shown, no significance attaches to the existence of an intent to return the objects wrongfully obtained. It is to be noted that in many cases enunciating this doctrine the choice of the court lay between upholding a conviction of embezzlement—

**258**

or of false pretenses—or of acquitting the defendant entirely. In military law under the Uniform Code we are freed from this dilemma by the existence of the offense of wrongful appropriation—intermediate between a complete acquittal and the stigma of larceny.

### IV

Congress, of course, provided the framework, but considerable leeway was left to the draftsmen of the Manual in defining what constitutes an intent "permanently" to deprive and what a purpose only "temporarily" to deprive an owner of his property. Presumably with regard for certain conditions conducive of thievery which inescapably characterize the communal life of the Armed Services, those draftsmen selected rules which in most instances are stringent—that is, relatively severe. See United States v. Krull, 3 USCMA 129, 11 CMR 129. Thus, an accused is guilty of larceny if—however fervent his desire to return misappropriated property—his ability to do this "is so conditioned by foreseeable events as to render it likely that the owner will suffer permanent loss." United States v. Johnson, 3 USCMA 709, 14 CMR 127. Similarly in paragraph 200*a*(6) the Manual provides:

> "An intention to pay for the property stolen or otherwise to replace it with an equivalent is not a defense, even though such an intention existed at the time of the theft, and, once a larceny is committed, a return of the property or payment for it is no defense."

This directive is designed to serve two purposes. For one thing, it enunciates the well-recognized principle that a change of heart on the part of a thief constitutes no defense. See e. g., United States v. White, 51 BR 399; United States v. Waterman, 7 BR-JC 45; United States v. Wilkey, 10 CMR 334. Further it requires that, to raise the lesser and included offense of wrongful appropriation, a showing be made that the accused intended to return the *identical* property misappropriated. In United States v. Krull, supra, we upheld this provision as ap-

plied to foodstuffs—comparatively fungible property. The accused in that case asserted that he had intended only to "borrow" certain groceries which he had taken from the enlisted mess of the company he commanded—and by this he appeared to mean that, at the time of the taking, he proposed to replace them with similar items. In our view, this was insufficient to suggest the existence of an offense of less gravity than larceny—since, for obvious reasons, there was no intimation that he intended to return the selfsame property he had "borrowed."

It has been emphasized in argument before us that the instant case involves "money," and that this cannot safely be included within the term "property" as used in the Manual. On at least two occasions an Air Force board of review has indicated that such a distinction may indeed be recognized. United States v. Clements, supra; United States v. Maxwell [ACM 5128], 7 CMR 632. We note, too, that the New York Court of Appeals took pains to avoid specific approval of a lower court holding to the effect that a check, which was cashed, had been consumed, and therefore—so far as a charge of embezzlement was concerned—could not be returned. People v. Kaye, supra.

Article 121 speaks of "money, personal property, or article[s] of value of any kind." Yet the Manual in paragraph 200a(6) refers only to "property." Thus it might conceivably be argued that the purpose of the Manual's framers was to include only other personal property, through use of the term "property," and to exclude money from the coverage of the rule. We must reject this contention for the reason that, throughout the whole of paragraph 200, it is clear that the Manual uses the term "property" in such a sense as to embrace "money," as well as the other two subjects of larceny. So far as the policy of the matter goes, we can find no sort of reason to distinguish the money involved here from the groceries with which we were concerned in Krull. In view of the current standardization of foodstuffs, it would be hard to maintain, for example, that one loaf of bread is any the less the equivalent of another

of the same brand than that one greenback is indistinguishable from a second. The important consideration here, we are sure, is that the draftsmen of the Manual were concerned not with "equivalence," but with "identity."

The factors underlying this concern with "identity" are fully dealt with in Krull, and the choice made by the Manual's framers distinctly falls within their proper sphere of discretion. Administratively speaking, difficulties may indeed be encountered in determining when a misappropriated object has lost its identity in the hands of the taker— and therefore may not, under any circumstances, be returned to the true owner. However, under the defense view, like difficulties might well be faced in determining which items are so completely fungible that—legally speaking—no distinction may be drawn by reason of the fact that the accused did not intend to return the object taken, but one like it in every material quality. Fortunately we need not balance administrative convenience under the opposed views—for the Manual has spoken in an area in which its terms must control.

Thus we conclude—as in the Aldridge case, supra—that under Article 121 "the particular means of acquisition of the property . . . [have become] relatively unimportant, and the critical question in each case now is the intent with which the property in question is held by the accused." If his intent is to deprive the owner of it permanently, he is guilty of larceny; if temporarily only, then of wrongful appropriation. Moreover, we conclude that a return of —or an intent to return—the property, so as to reduce the crime from one of larceny to a mere wrongful appropriation, must involve a return of the identical item withheld, and not any sort of equivalent or reasonable facsimile. And we conclude finally that money is not to be distinguished for this purpose from any other sort of "personal property, or article of value of any kind," as mentioned in Article 121. As a matter of Code or Manual interpretation, we are not required to hold otherwise in this last area—and every policy consideration operative in the military scene of

which we are aware appears to us to dictate the determination we have reached.

## V

Returning to the facts of the case before us, and regarding them through the spectacles of the approach delineated in preceding paragraphs, it is clear that, as to the final six specifications, the accused wholly failed to raise the lesser offense of wrongul appropriation—this for the plain reason that his confession to the Article 32 investigator reveals that he had expended the money he had misappropriated from the hospital fund. Clearly he could not return the identical property he had withdrawn. And so, under the Manual for Courts-Martial, he must be guilty of larceny—even assuming the truth of his protestations that at all times he had intended to replace the amount taken.

As to the first specification, we have analyzed carefully the testimony given thereunder by the accused at his trial. Unmistakably it reveals that, although his wife may have taken without his authority the strongbox in which was kept the sum entrusted to him, he did implicitly empower and authorize her to expend that money. It is entirely clear that she did so in payment of the family's debts. Her expenditure of the funds with the accused's consent merits treatment indistinguishable from that which would follow on a showing that the accused in person had spent the selfsame money. Accordingly, this specification presents a problem no different from that found in the succeeding six—and we must conclude similarly that, as to it, no issue of wrongful appropriation was raised by any evidence before the court-martial. Accordingly, no error resulted from the failure to advise the court concerning wrongful appropriation, and the decision of the board of review is affirmed.

Judge LATIMER concurs.

QUINN, Chief Judge (concurring in the result):

I concur in the result.

I am unable to agree with the rationale of the majority for the reasons set out in my dissenting opinion in United States v. Krull, 3 USCMA 129, 11 CMR 129. However, the evidence in this case justifies the conclusion that the issue of wrongful appropriation was not reasonably raised. Consequently, the law officer was not bound to instruct on that offense as lesser included in the offense charged. United States v. Sandoval, 4 USCMA 61, 15 CMR 61.