UNITED STATES, Appellee

v

CHARLES R. BOUDREAU, Staff Sergeant, U. S. Air Force, Appellant

9 USCMA 286, 26 CMR 66

No. 10,701

Decided May 29, 1958

*Major George M. Wilson* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ellis L. Gottlieb.*

*Lieutenant Colonel James R. Thorn* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels.*

ROBERT E. QUINN, Chief Judge:

The question before us is the correctness of the law officer's instructions.

Seeing that the door of the safe in the Gunter Noncommissioned Officer's Club was open and no one was present, the accused walked into the office, took from the safe an envelope containing over $400, and left. A few days later, he cashed two checks, each for $20, at the Club. The checks were drawn on a nonexistent account. A third check in the same amount was cashed at the Club the next day. The following day, the accused informed one of the Club stewards that the checks would "possibly be returned." He deposited with the steward $60 to "take care" of them upon their return. According to a pretrial statement by the accused, he cashed the checks in the "hope" that he would "prevent anyone from becoming suspicious about the money" he was spending.

Eventually, the accused was brought to trial on four charges of larceny. The first specification alleged the theft from the Club's ˜afe; the other three specifications referred to the checks issued by the accused. At the trial, defense counsel requested an instruction to the effect that if the court-martial found the accused "intended to make good the checks . . . prior to or at the time of their presentment," he should be acquitted. See United States v Lightfoot, 7 USCMA 686, 23 CMR 150. The request was denied and instead the law officer instructed the court-martial as follows:

". . . under the existing interpretation of the law within the armed forces unless you find that the accused intended to return the *identical money* received in exchange for the checks [you cannot return a finding of guilty on the lesser offense of wrongful appropriation]. [And, later in the instructions the law officer advised the court-martial that] an intention to replace money found by you to have been stolen with an equivalent amount is not a defense, *even though such intention existed at the time of the theft.*"

Since, on his own admission, the accused intended to replace the money obtained by means of the worthless checks with money other than that received, it is apparent that the law officer's instructions amounted to a directed verdict of guilty. It is also apparent that the law officer recognized the effect of his instructions, but felt constrained to give them because of the "existing interpretation of the law." See United States v Krawczyk, 4 USCMA 255, 15 CMR 255. The consequences of the instruction were also recognized by the assistant staff judge advocate who prepared the excellent post-trial review, and the staff judge advocate who concurred in the review with "a few observations" on the instructions. The assistant staff judge advocate "realized that the law announced by the Krawczyk case, *supra,* is harsh when applied to the circumstances of this case," but he believed it was "binding." Similarly, the staff judge advocate yielded to the "inexorable rule in *Krawczyk,*" despite his belief that the instruction precluded the court-martial "from determining the nature of the intent of the accused at the time he cashed the checks," and that it amounted to "a conclusive presumption which no amount of evidence on behalf of the accused could overcome."

In United States v Krawczyk, supra, by divided opinion, this Court, as then constituted, construed Article 121, Uniform Code of Military Justice, 10 USC § 921, as requiring a person who takes the property of another to return the *identical* property if he is to escape a charge of larceny. Under that view, the instructions here are unquestionably correct. The fact that the accused intended to, and did actually, replace the proceeds from the checks with other money was no defense under the *Krawczyk* decision. At the time the petition for review in this case was filed, the present Court had under advisement a case in which we were re-examining the rationale of the *Krawczyk* decision and that in the earlier case of United States v Krull, 3 USCMA 129, 11 CMR 129, On re-examination of the question-

tion, we concluded that the rule of *Krawczyk* and *Krull* was wrong in its insistence that the money returned must be exactly that taken without the consent of the owner. We said that it "is not larceny, for example, to take two five dollar bills in exchange for a ten dollar bill without the knowledge or consent of the owner." United States v Hayes, 8 USCMA 627, 629, 25 CMR 131. If the accused's story is correct, all that he intended here was to effect such an exchange. And that is what his counsel attempted to present to the court-martial by the requested instruction. True, the accused's motive in effecting the exchange was base, but that circumstance does not change the fact that the court-martial could find from the evidence that he did not intend to deprive the Club of its money.

Were it not for our earlier view of Article 121, the case might not have come to this Court. Judges, however, are human. Sophocles tells us in *Antigone* that "To err from the right path is common to mankind." We can also say with him that:

"To know that all is well, even if late

We come to know it, is at least some gain."

The decision of the board of review as to specifications 2, 3 and 4, Charge I, and the sentence is reversed. The record of trial is returned to The Judge Advocate General of the Air Force for resubmission to the board of review. In its discretion, the board of review may dismiss the findings of guilty of said specifications and reassess the sentence on the basis of the remaining findings of guilty or order a rehearing on the specifications and the sentence.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

The evidence of this case renders inapplicable the rule of United States v Hayes, 8 USCMA 627, 25 CMR 131. Specifications 2, 3, and 4 alleged larceny by three checks drawn upon the Howard National Bank, Burlington, Vermont. The accused entered into a stipulation introduced at trial which, in part, showed that he maintained a savings account at that bank, and prosecution witnesses testified to the fact that he suggested, a day after the checks were drawn, that he was uncertain as to whether his funds at the Howard Bank were in a savings or checking account. In the light of the testimony and as a consequence of the demands of defense counsel, the law officer instructed upon mistake of fact. If that defense has any validity, then accused at the time he obtained the funds could not have intended to deprive the Noncommissioned Officers' Mess of its property, either permanently or temporarily. But more important to my view of the controversy is the fact that there is no evidence in the record which even suggests that *at the time of the making of the checks* the accused intended to return any funds, whether similar or identical, to the payee. That situation must have been realized by trial defense counsel, for his requested instruction significantly does not require a finding of intent at the time of the taking. All that is shown by the testimony in the record is that there was a restitution subsequent to the commission of the crime. As Justice Holmes said in his work, The Common Law, at page 72:

". . . Theft may be called an attempt to permanently deprive a man of his property, which is punished with the same severity whether successful or not. If theft can rightly be considered in this way, intent must play the same part as in other attempts. An act which does not fully accomplish the prohibited result may be made wrongful by evidence that but for some interference it would have been followed by other acts coordinated with it to produce that result. This can only be shown by showing intent. In theft the intent to deprive the owner of his property establishes that the thief would have retained, or would not have taken steps to restore, the stolen goods. Nor would it matter that the thief afterwards changed his mind and returned the goods. From the point of view of attempt, the crime was already complete when the property was carried off."

288

Consequently, I find that the requested instruction upon which the principal opinion turns was erroneous and not required by the evidence, so perhaps I should answer the philosophical criticism of our views in United States v Krawczyk, 4 USCMA 255, 15 CMR 255, by replying in the words of Sir Winston Churchill, who said:

"I do not resent criticism, even when, for the sake of emphasis, it parts for the time with reality." [Speech, House of Commons, January 22, 1941.]

I would affirm the decision of the board of review.