UNITED STATES, Appellee

v

ROBERT D. McFARLAND, Private First Class, U. S. Marine Corps, Appellant

8 USCMA 42, 23 CMR 266

43

No. 9372

Decided May 31, 1957

*Lieutenant Thomas A Stansbury,* USNR, argued the cause for Appellant, Accused. With him on the brief were *Captain Albert L. O'Bannon,* USN, and *Commander Earl C. Collins,* USN.

*Major Verne L. Oliver,* USMC, argued the cause for Appellee, United States. With him on the brief was *Commander Guilbert W. Martin,* USN.

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was charged with, *inter alia,* the larceny of a wallet containing $12.00, the property of one Price, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921 (specification 2, Charge 1). By exceptions and substitutions he was found guilty only of the larceny of $2.00. For this and other offenses he was sentenced to a bad-conduct discharge, total forfeitures, confinement at hard labor for nine months, and reduction to the rank of private. The convening authority reduced the period of confinement to seven months but otherwise approved the sentence, and a board of review, although disapproving the findings of other offenses, affirmed the sentence as approved.

The sole issue upon which this Court granted review relates to the sufficiency of the evidence to sustain the conviction of the larceny of $2.00 from Price. Only the facts which gave rise to that issue need be set forth. Price testified that on Thanksgiving Eve, 1955, his wallet, containing $12.00 was stolen from his room. He identified the thief as one Joseph, a close friend of the accused. Joseph was subsequently called as a prosecution witness and quite candidly admitted that he had stolen Price's wallet. He further disclosed that he alone had been involved in the theft and that the accused had not known that the theft would occur. On the morning following the theft the witness presented the accused with $2.00, informing him that the money had belonged to Price. Trial defense counsel objected to Joseph's testimony on the grounds that it tended to establish the offense of receiving stolen property which was of "no consequence upon the charge against this accused of stealing Prices money." The trial counsel, on the other hand, sought to justify the admission of such testimony on the theory that "if a man has received the stolen goods, and has knowledge of the goods being stolen, he is then wrongfully withholding, which is an element of a specification of larceny." The law officer declared a recess for the express purpose of examining legal authorities before making his ruling, and upon reopening the court, overruled the objection of the defense and permitted the testimony to remain in the record. He informed counsel that he based his ruling on this Court's recent decision in United States v Sicley, 6 USCMA 402, 20 CMR 118.

After both sides had rested, the law officer instructed the court on the elements of the offense of larceny. A member of the court thereupon directed

the following question to the law officer, which we believe accurately previewed the issue which we are now called upon to determine:

"MEMBER: If a person receives property, or money which he knows to be the property of another individual, other than the one by whom it was given to him, is he guilty of withholding that property of another? Or is he guilty of receiving the property."

The law officer answered this inquiry by referring the court-martial to his prior instructions on larceny and in particular to the fact that an accused could be found guilty of larceny if he wrongfully withheld property from the true owner with the intent to permanently deprive. The court-martial, after due deliberation, found the accused guilty of the larceny of $2.00.

We observe at the outset that the specification conforms with the model provided in the Manual for Courts-Martial, United States, 1951, in that it alleged that the accused did "steal" the property in question. Article 121, supra, provides that:

"(a) Any person subject to this chapter who wrongfully takes, obtains, or withholds, by any means, from the possession of the owner or of any other person any money, personal property, or article of value of any kind—

"(1) with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner, steals that property and is guilty of larceny. . . ."

In United States v Buck, 3 USCMA 341, 12 CMR 97, we had occasion to discuss the application of Article 121 to theft offenses. We there recognized that although the sweep of the Article was vast it was not infinite. Chief Judge Quinn, speaking for a unanimous Court in that case, delineated the scope of statutory larceny when he said:

"By enacting Article 121 (a), ·supra, Congress eliminated the oft-times subtle and confusing distinc-

tions previously drawn between common law larceny, embezzlement, and false pretenses. United States v. Aldridge, 2 USCMA 330, 8 CMR 130, decided March 24, 1953; United States v Norris, 2 USCMA 236, 8 CMR 36, decided February 27, 1953. *The consolidation of these crimes, however, did not enlarge the scope of the statutory crime of 'larceny' to include more than its components previously encompassed. Since the whole is equal to, not greater than, the sum of all its parts, that which did not constitute common law larceny, embezzlement, or false pretenses, prior to the adoption of Article 121(a), supra, was not thereafter punishable as a violation thereof.*" [Emphasis supplied.]

In order to prevail, the Government must bring the conduct engaged in by this accused within the prohibited areas defined in Article 121 of the Code. At trial the accused's conviction for larceny was sought on the theory that he had wrongfully withheld the property of another with the requisite intent. The Manual for Courts-Martial, supra, defines the words "takes, obtains, or withholds," as used in Article 121 of the Code, in the following manner:

". . . A wrongful taking with intent permanently to deprive includes the common law offense of larceny; a wrongful obtaining with intent permanently to defraud includes the offense formerly known as obtaining by false pretense; and *a wrongful withholding with intent permanently to appropriate includes the offense formerly known as embezzlement.* Any of the various acts denounced as larceny by Article 121 may be charged and proved under a specification alleging that the accused stole the property in question." [Paragraph 200a (1).] [Emphasis supplied.]

Embezzlement is a purely statutory offense not having been recognized as a crime at common law. The object of the various statutes creating this offense was to obviate certain defects found in the law of larceny

**45**

which permitted many persons who had misappropriated the property of another to escape criminal prosecution because of the absence of a trespass. Generally in embezzlement, the property comes lawfully into the accused's possession by virtue of the existence of a fiduciary relationship with the owner. 18 Am Jur, Embezzlement, § 2.

When we look to the facts of the instant case, we are unable to find any conduct engaged in by this accused which would previously have constituted the offense of embezzlement. He was in no manner involved in the actual theft of the wallet or in the preparations preceding it. His participation in the incident was limited to the acceptance of $2.00 from the thief with the concurrent knowledge that the money had been stolen from the victim. A finding of guilty, therefore, cannot be predicated upon a theory of embezzlement or false pretenses because patently there existed no fiduciary relationship as between the accused and Price and there is not the slightest indication that the property was obtained by false pretenses. Neither can the finding of guilty stand on the theory of common-law larceny. The present Article, as did each of its predecessors, requires a taking by trespass from the possession of the owner, accompanied by an intent to permanently deprive the owner of his property. The element of taking by trespass is absent from the instant case.

The Government in its brief—as did the law officer at trial—relies heavily upon certain language found in the case of United States v Sicley, supra, to sustain its position. Particular emphasis is placed on the following quotation from Judge Brosman's opinion in that case:

". . . *Our statute* [Article 121], *however, makes punishable, inter alia, conduct amounting to no more than a withholding from the possession of the true owner of something of value with an intention permanently to appropriate it.*" [Emphasis supplied.]

Standing alone, this italicized passage appears supportive of the Government's position. However, we believe that when it is placed in its proper context, a contrary conclusion obtains. Immediately following the above-quoted extract is to be found the following additional language, which must be read together with the italicized portion:

". . . Moreover, the Manual for Courts-Martial merely provides that such a withholding may arise either (1) because of a failure to account for property belonging to another where an accounting is due, or (2) as a result of having devoted property to a use not authorized by its owner. Paragraph 200a, supra."

In this last-quoted passage "failure to account for property belonging to another where an accounting is due" applies to the offense of embezzlement where the existence of a fiduciary relationship is essential to conviction. The second subdivision, namely the application of "property to a use not authorized by its owner" is specifically designed to cover those situations dealing with conversion by a person having lawful possession. This latter principle would apply, for example, in cases of bailment where a bailee terminates his right to possession. The following extract from Clark and Marshall, Law of Crimes, 5th ed, § 318(2), correctly illustrates this well-recognized common-law principle:

"If a bailee, after obtaining possession without felonious intent or fraud, does any act which will have the effect in law of terminating his right to possession, and after this feloniously converts the goods to his own use, he is guilty of larceny, for after the termination of the bailment he no longer has any special property in the goods or lawful possession but stands in the same position as a servant having the mere charge or custody of them, the legal possession being in the owner. Thus, if a man hires or borrows a horse to ride to A, and rides to B, or if he hires or borrows a horse for one day and wrongfully keeps it for two, he thereby terminates the bailment; and

46

if he forms and carries out, at B or on the road to B, or on the second day, as the case may be, a felonious intent to convert the property to his own use, he is guilty of larceny."

In Sicley, supra, we fully appreciated the fact that Article 121 was only intended to include conduct formerly recognized as constituting the specific offense of common-law larceny, embezzlement, and false pretenses. For in speaking of Congressional intent, as manifested by Article 121, we there said:

". . . Thus by sanctioning a specification alleging merely that the accused 'did . . . steal' something of value, the property of another, the framers of the Manual, in accordance with the express intent of Congress, acted to abolish prior technical distinctions in pleading the crimes of larceny, embezzlement, and taking by false pretenses. Under such a specification, therefore, the Government may prove any one of the acts proscribed by the Article."

And in a footnote found later in the opinion, we again pointed out that:

"It must be remembered that under the decisions of this Court—notably the Aldridge case, cited earlier herein [United States v Aldridge, 2 USCMA 330, 8 CMR 130] and in the dissenting opinion as well—Article 121 created no offense not theretofore known to military law. Instead, its provisions simply merged three existing crimes—larceny, embezzlement and taking by false pretenses—and, at the same time, abolished certain common law technicalities applicable to one or some of them."

Accordingly, we conclude that the evidence is insufficient as a matter of law to sustain a larceny conviction.

One further problem remains. We are not unmindful that the posture of the evidence strongly suggests that the conduct engaged in by this accused is closely related to the offenses of being an accessory after the fact, in violation of Article 78, Uniform Code of Military Justice, 10 USC § 878, and receiving stolen property, knowing the same to be stolen in contravention of Article 134. An accessory after the fact is one "who knows that an offense punishable by the code has been committed and who thereafter receives, comforts, or assists the offender in order to hinder or prevent his apprehension, trial, or punishment." Paragraph 157, Manual for Courts-Martial, supra. In United States v London, 4 USCMA 90, 15 CMR 90, we adhered to the well-established rule which holds that "the offense of an accessory after the fact is a crime separate from that of the substantive offense." State v McAlister, 139 Kan 672, 33 P2d 314. The form of the specification here makes the general rule applicable. Accordingly, we conclude that the offense of being an accessory after the fact is not a lesser included offense of larceny. 22 CJS, Criminal Law, § 99h. Receiving stolen property, knowing the same to have been stolen, likewise is not a lesser included offense of larceny. 32 Am Jur, Larceny, § 50. We regard it as well established that the essential elements of proof as to larceny are incompatible with those of receiving stolen property. People v Jacobs, 73 Cal App 334, 238 Pac 770; Smith v State, 59 Ohio St 350, 52 NE 826; State v Hamilton, 172 SC 453, 174 SE 396.

The decision of the board of review is reversed, the finding of guilt of specification 2, Charge 1, is set aside, and the same is ordered dismissed. The record of trial is returned to The Judge Advocate General of the Navy for submission to a board of review for a reassessment of the sentence for the remaining finding of guilt.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result) :

I concur in the result.

In my opinion, the wording of Article 121, Uniform Code of Military Justice, 10 USC § 921, when considered in its ordinary sense, is broad enough to include in its bounds the offense which is and has been known as

47

receiving stolen goods with knowledge that they were stolen. So, too, is the language found in paragraph 200a(6), of the Manual for Courts-Martial, United States, 1951, for it provides that whether the acquisition be lawful or unlawful, larceny is committed if the requisite intent is present at the time of acquiring or at some other time subsequent thereto. In addition, our language in United States v Aldridge, 2 USCMA 330, 8 CMR 130, and United States v Sechler, 3 USCMA 363, 12 CMR 119—which may have been too loose—states clearly that the particular means of acquiring the property is unimportant, as the critical question in each case now is the intent with which the property was held by the accused.

On the surface, it appears that there is some inconsistency between the statements made in the cases I have mentioned above and those found in United States v Buck, 3 USCMA 341, 12 CMR 97. However, if the language we used in the former is considered in light of the issues we were dealing with and the fact that we had our attention focused on the three offenses which were combined under Article 121, the apparent inconsistency disappears. Prior to the present Code, in those crimes either legal or illegal acquisition could have been an appropriate element, so it literally followed that when they were combined, the method of acquisition became immaterial and the critical question became the intent with which the property is held. I would, therefore, conclude that by restricting the language to the offenses defined in Article 121, the inconsistency is removed.

The reason that I place a narrow construction on both the Code and our cases is that I conclude that, regardless of the sweeping coverage of the phrases used, Congress did not intend to do away with the offense of receipt of stolen property by merging it with other variations of larceny under one punitive article. That offense was well recognized at common law, and an inspection of the various Manuals shows that, while it has never been defined in a punitive article from as early as 1917 and up to the present day, it has been recognized as a separate offense in the form specifications. Most certainly the framers of the Code and those members of Congress who participated in the hearings were familiar with the offense, and had they intended to combine it with the other offenses grouped under Article 121, I would expect to find some suggestion to that effect reported in the House or Senate hearings. I find none, as in every recorded discussion on the article the grouping is limited to the three offenses I have mentioned. It is, therefore, a reasonable assumption that Congress did not intend to have this offense included within the definition of larceny. Based on that assumption, I am forced to conclude Congress intended to preserve the historic distinction between the two crimes. Therefore, if we retain the differences, the accused would not be guilty of larceny, and the language we previously used should not be considered as all-inclusive.