UNITED STATES, Appellee

v

JACK J. LANE, Master Sergeant,
U. S. Air Force, Appellant

9 USCMA 369, 26 CMR 149

No. 10,645

Decided June 20, 1958

*Major Donald C. Helling* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ellis L. Gottlieb.*

*Lieutenant Colonel John F. Hannigan* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels.*

ROBERT E. QUINN, Chief Judge:

The accused was tried by general court-martial upon 10 specifications, each of which alleged larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. He pleaded guilty to seven of the specifications and not guilty to the remaining three. The court-martial convicted him of all specifications, and imposed sentence. We granted his petition for review to determine the propriety of the law officer's instructions, and the sufficiency of the staff judge advocate's review.

The seven specifications to which the accused pleaded guilty involved larceny by check. The remaining specifications (specifications 1, 2 and 3) arose out of the accused's handling of certain sums of money. A brief description of the facts relating to the latter offenses will suffice to put the first issue in its proper perspective.

While stationed in Okinawa, the accused served as First Sergeant of his squadron. During this period Airman First Class Stewart gave the accused approximately $350, requesting that he keep the money in the squadron safe until a compassionate leave authorizing Stewart's return to the United States was granted. The accused accepted the money. When Stewart's leave was granted, the accused was unable to return the money, for, he said, he had used it. By cashing several small checks at various Post Exchanges the accused procured approximately $200 which he gave Stewart, promising to repay the balance upon the latter's return. This promise was in fact kept. At trial, the accused defended on the theory that Stewart permitted him to use the funds at his discretion, and so a simple debtor-creditor situation resulted.

The two other specifications (specifications 2 and 3) involve a nonappropriated fund account consisting of sums paid to the accused by members of the squadron to defray the expenses of hiring indigenous personnel as houseboys and in related occupations. Pertinent directives required the accused to deposit these collections in the American Express Bank, retaining duplicate deposit slips for his records and the records of the Nonappropriated Fund Office, which supervises the accounts of all units in the area. Competent evidence showed that in October and November 1956 the accused collected $173.75 and $118.75, respectively, for the purposes above stated. However, neither sum was deposited in the Bank, nor were the required duplicate deposit slips delivered to the Fund office. The accused produced two deposit slips for $133.75 and $145.25, respectively, alleging that the first had been deposited by Private First Class Vergari, and the second by himself. He further declared he had delivered the duplicate deposit slip covering the latter amount to a Mrs. Young at the Fund office. Vergari denied receiving any such amount from the accused, and there appeared to be no person named "Mrs. Young" at the Fund office.

In the course of his instructions to the court-martial the law officer outlined the essential elements of larceny, making reference to a "taking, obtaining, or withholding" of the property described in the several specifications. He followed this delineation of the elementary requirements by a complete explanation of the "obtaining." This consisted of a definition of larceny by false pretenses. The instructions supplied on the lesser included offense of wrongful appropriation followed the same pattern.

The court-martial convicted the accused of each of the offenses alleged, except that relating to the crime involving Stewart's money. As to this, the accused was convicted of wrongful appropriation only.

The first issue framed for review concerns the propriety of the inclusion of the theory of false pretenses within the scope of the court's consideration of

the offenses to which the accused pleaded not guilty.

The defense concedes that a reference to "taking, obtaining, or withholding" of property may meet minimal standards as fixed by United States v Aldridge, 2 USCMA 330, 8 CMR 130. However, it is argued, no view of the evidence relating to the three offenses in issue before the trial court supports the theory of larceny by false pretenses. Thus, by limiting his explanation of the first essential element to a definition of larceny by false pretenses, the law officer necessarily limited the court's consideration to a theory not raised by the evidence.

It is true that instructions upon a theory not fairly presented may constitute reversible error. ▉▉▉▉▉▉ United States v Holsey, 2 USCMA 554, 10 CMR 52; United States v Moynihan, 1 USCMA 333, 3 CMR 67. But instances of that defect were found when the pertinent codal provisions, upon which the crime under consideration was predicated, established distinctly separate offenses or involved distinctly separate intents. Cf. United States v Redenius, 4 USCMA 161, 15 CMR 161. However, Article 121(a) (1), supra, establishes but a single offense of larceny. United States v Aldridge, supra. The consolidation of the theretofore ▉▉▉▉▉▉ existing crimes of larceny, embezzlement and taking under false pretenses was accomplished primarily to eliminate confusing distinctions which needlessly encumbered the administration of criminal justice. United States v Aldridge, supra; United States v Buck, 3 USCMA 341, 12 CMR 97; United States v Sicley, 6 USCMA 402, 20 CMR 118; United States v McFarland, 8 USCMA 42, 23 CMR 266. Under these provisions, a law officer's use of language having its roots in earlier decisions may very well be inartful, but does not result in error. United States v Sicley, supra.

Nor can it be said here that the singling out of the word "obtaining" and the elaboration upon a ▉▉▉▉▉▉ theory of false pretenses left the court-martial without adequate instructional guidance.

**372**

Seven of the specifications before the court were predicated upon larceny by check—a common instance of taking by false pretenses. Under paragraph 73b, Manual for Courts-Martial, United States, 1951, the law officer is required to delineate the essential elements of each offense charged, whatever the plea may be. United States v Lucas, 1 USCMA 19, 1 CMR 19. Moreover, the evidence presented in support of specification 1, pertaining to the Stewart transaction, permitted an inference that at the time the accused accepted the money he intended to use it for his own purposes. To a lesser degree, such an inference might also be drawn from the accused's disposition of the nonappropriated fund account.

Thus, the principal instructions upon the essential elements were proper, and the elaboration of but a single method of acquiring possession of the property described was supported by the evidence. Also, at the conclusion of these instructions, the defense specifically expressed satisfaction with what had been said. His only suggestion was that the court-martial be instructed upon the lesser offense of wrongful appropriation. When his request was granted, in the very language now under consideration, he expressed satisfaction with the instructions. Although the practice of elaborating upon one theory of the prosecution's case, without expanding his instructions to include all, is not an advisable course for law officers to take, here defense counsel's failure to request further elaboration precludes reversal at this level. United States v Miller, 8 USCMA 33, 23 CMR 257.

We now turn to the final issue:

"Whether the staff judge advocate's advice that there was sufficient 'competent evidence in the record of trial to sustain' the court's findings on specifications 1, 2 and 3 applied only a legal sufficiency standard."

After summarizing the evidence of record, the staff judge advocate noted that as to those offenses to which the accused had pleaded guilty no question of guilt remained. Concerning the remaining specifications he declared:

"There is sufficient competent evi-

dence in the record of trial to sustain the court's findings of guilty as to specifications 1, 2 and 3 of the Charge."

In the "Conclusions" portion of his review he stated:

"c. The record of trial is legally sufficient to sustain the findings of guilty and the sentence."

Nowhere in his review did he employ any language which might conceivably indicate that he had ▐▐▐▐ gauged the capacity of this evidence to establish the guilt of the accused, as to the specifications in question, "beyond a reasonable doubt." By this failure to set out his opinion "as to the . . . weight of the evidence, supported by his reasons for such opinion," the accused was deprived of the review demanded by Article 61 of the Code, 10 USC § 861, and paragraph 85b, Manual for Courts-Martial, United States, 1951. United States v Fields, 9 USCMA 70, 25 CMR 332. Since the question of guilt or innocence as to specifications 1, 2 and 3 of the Charge was in dispute, prejudice is apparent. United States v Pharis, 9 USCMA 219, 25 CMR 481.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Air Force for submission to a competent reviewing authority for further proceedings under Articles 61 and 64, Uniform Code of Military Justice, 10 USC §§ 861 and 864.

Judges LATIMER and FERGUSON concur.