UNITED STATES, Appellee

v

ALFRED SMITH, Master Sergeant, U. S. Air Force, Appellant

11 USCMA 321, 29 CMR 137

No. 13,498

Decided March 11, 1960

*Major Quincy W. Tucker, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel James L. Kilgore.*

*Major John C. Wiley* argued the cause for Appellee, United States. With him on the brief was *Colonel John F. Hannigan.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was brought to trial before a general court-martial of the Third Air Force in England, on four specifications of larceny of money from the Government, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. He pleaded guilty to one of the specifications and not guilty to the others. However, he was convicted of all charges, and a sentence was adjudged which included a bad-conduct discharge and confinement at hard labor for three years. Intermediate appellate authorities affirmed, with some modification of the sentence. The case is here on the accused's petition for review, which alleges that he was prejudiced at the trial by instructional errors by the law officer.

The evidence shows the accused was the noncommissioned officer in charge of the Base accounting and finance office. Part of his responsibility was to maintain the military pay records, including those of personnel of the finance office, and to approve requests for pay in advance of the regular pay periods. On April 2, 1958, by using a fictitious name and falsifying certain records, he obtained $450. This is the offense to which he pleaded guilty. On July 1, 1958, the accused prepared a voucher and authorization slip for "partial" pay of $150 for himself. The person who approved slips for payment was required to determine the payee's entitlement thereto, and to initial the pay slip. Also required was an appropriate entry in the individual pay

record of the payee, and the initialing of the pay slip by the person who verified the posting. The pay slip was then given to the payee, who presented it to the cashier and received payment. The accused asked Sergeant Moore, an auditor in the office, to initial the pay slip; he told Moore he "had posted" the payment. In fact, he did not do so. He received the money from the cashier. On July 23, the accused prepared a voucher and payment slip for himself for an "overpayment" of pay in the amount of $125. He did not post the entry on his payroll record. The individual pay record for the six-month period, ending December 31, 1958, was closed out and a new pay account was opened for the accused. However, no entry appeared in the record to show the payments made on July 1 and July 23, 1958. On January 6, 1959, the accused prepared a voucher and payment slip for himself for $240 for regular pay. He submitted it to Airman Kimbrough to have it "authenticated." Kimbrough asked "if the entry had been posted on . . . [the accused's] pay record" and was advised by the accused it had been so posted. The reply was untrue. The accused was paid the $240. According to a pretrial statement by the accused, introduced into evidence without objection, all partial payments were made on his "authority as NCOIC and without the approval of . . . [his] superiors." On January 29, 1959, an examination of the pay records by an auditor disclosed the discrepancies in the record. Corrective entries were made on the accused's record, and the accused was placed in a "no pay due" status until the amounts of the prepayments could be recouped.

Each of the three prepayments was made the basis of a charge of larceny against the accused. At trial, the accused did not testify. However, one of his two pretrial statements admitted into evidence contains the following comment:

". . . In July 1958 when I received the $150.00 and $125.00 I had every intention of posting these amounts to my Pay Record, however, I did not do so and as time passed I want to give my wife and son a nice

Holiday in Germany and adopt a child and when closeout came I didn't have the money to repay. I have no excuse for not posting the amounts to my Pay Records."

No mention appears anywhere in the statement of the accused's intention in regard to the posting of the $240 payment. Also, there is no mention of any belief on his part that he was entitled to the payments at the time they were made, or that he was authorized to proceed as he did. However, it was stipulated that if Sergeant Moore was present he would testify he had worked in the finance office since 1955; that it "was not an uncommon practice during 1957 and early 1958" for office personnel to draw partial pay, which would result in an over-pay status; the finance officers, especially those who preceded Major Hynes, who assumed his duties as Finance Officer on July 6, 1958, and Captain Passant, Hynes' deputy, were aware of the situation and "acquiesced in it." Sergeant Moore sometimes "drew overpayments." However, there is no testimony to indicate the accused knew of the practice. If anything, his pretrial statement tends to show he did not know of it; thus he said: "I realize now that I could have went to my Superiors for help and would have received it."

The theory of defense, elaborated in argument by defense counsel, was that the accused received each of the payments alleged, but at the time he did not intend to steal the money; rather, he intended to post the payments, "all three of them." Counsel further argued that the accused "didn't realize that he wasn't authorized to receive" the overpayments, and he did not misrepresent his state of mind in presenting the slips for payment and receiving the money. He said:

". . . I submit to you that quite possibly a person carelessly could not only forget to post it, but forget all about it."

Instructions on the elements of the offense, and those of the lesser offense of wrongful appropriation, were given by the law officer. Certain instructions

**323**

requested by defense counsel were refused. Except as to the denial of the requests, defense counsel indicated he had no objection to the instructions given. On this appeal, it is urged that the law officer erred in refusing to give the requested instructions, and in giving two other parts of the instructions.

We consider first the requested instructions. There were five requests. The initial one is as follows:

"Under the circumstances of this case, you cannot find the accused guilty of any specification of the charge concerning which you find that at the time he received the payment the accused did intend to post it to his pay record."

The difficulty with this instruction is that it improperly limits the court-martial. The court-martial could find from the evidence that the accused intended to steal the money, when he prepared and presented the payment slips and lied about the postings, despite an existing intent to post the entries at a later time. Indeed, it might find that the accused did, in fact, intend to post the entries but only at such time as it became necessary to escape suspicion or prosecution. The court had before it evidence of three identical acts in regard to which the accused had lied. It is significant that with respect to the last payment, the accused said nothing whatever about intending to post the entry. In our opinion, the law officer properly refused the request.

The second instruction is as follows:

"If you find as to any specification of the charge that the accused did intend to post the payment to his pay record, but also find that the payment was wrongful and that the accused knew that it was wrongful, you must find him not guilty of larceny but you may find him guilty of wrongful appropriation as to that payment."

This instruction patently suffers from the same infirmity as the first. It does not leave the court-martial free, as justified by the evidence, to find that the accused may have intended to post the entries, but only if absolutely necessary and then merely as a means of avoiding punishment for the offense.

Requested instruction three is as follows:

"If you find as to any specification of the charge the accused did intend to post the payment to his pay record and that the payment was not wrongful, or that the accused believed that it was not wrongful, then you must find him not guilty as to that specification."

Except for the phrase "or that the accused believed that it was not wrongful," the request goes to the elements of the offense. Article 121 of the Uniform Code, supra, provides that any person subject to the Code "who wrongfully takes, obtains, or withholds" money or personal property of another with the intent permanently to deprive the owner thereof is guilty of larceny. Manifestly if the court-martial were to find that the payments were not wrongful, there would be no wrongful taking, and the accused would be entitled to a finding of not guilty. This part of the instruction was fully covered by the law officer. However, he made no reference to a belief by the accused that the taking was not wrongful. Appellate defense counsel contend the omission constitutes prejudicial error because the accused's honest belief is a proper affirmative defense. The argument is supported by law but not by the facts in the case. There is no evidence to show the accused honestly believed he had a right to draw the partial payments. United States v Sicley, 6 USCMA 402, 20 CMR 118.

The most appellate defense counsel say about the evidence is that the accused's pretrial statement "does not appear to indicate a belief on his part that he was not entitled to draw the advance payments." The accused's realization that he "could have went to . . . [his] Superiors for help" tends to show he did know his actions were wrong. Be that as it may, the accused was the noncommissioned officer in charge of the finance office records; he lied about the

postings; and he never thereafter posted the prepayments. These circumstances are sufficient to support the conclusion he knew what he was doing was wrong. Against this evidence there is not a single word that he believed he was engaged in a permissible act. Sergeant Moore testified about the practice of finance personnel in 1957 and early 1958, but there is not a word of evidence to show the accused knew of the practice; or that the practice was in effect at the time of his actions; or that Major Hynes and his deputy sanctioned it. Cf. United States v Thornton, 8 USCMA 446, 24 CMR 256. Since the "belief" part of the requested instruction has no support in the evidence, the law officer was correct in refusing to instruct on it.

Instruction four is as follows:

"If you find as to any specification of the charge that the accused did intend to post the payment to his pay record, and that part of the payment was wrongful and part was not wrongful, and that the accused knew that part of it was wrongful, you must find him not guilty of larceny but you may find him guilty of wrongful appropriation of the part of the payment which he believed to be wrongful."

The instruction is based on the idea that the accused had accrued some pay ▇▇▇▇▇▇ ■ at the time of each payment, and thus, he was not taking that part wrongfully when he drew the partial payment. Apart from other infirmities, the request suffers from the same deficiency as the first request. It improperly equates the issue of intent to deprive to the intent to post the entries. The request was properly denied.

The final request is as follows:

"In considering whether the accused believed that any payments in the specifications of the charge were wrongful, you are instructed that you may not conclude that he knew a payment was wrongful if he believed in good faith that he was merely borrowing even without prior consent of his superiors."

The request is, as appellate defense counsel concede, "not a model of correctness in its wording." Apparently it is based upon a general statement of the principles of law in this area, which we set out in United States v Hayes, 8 USCMA 627, 629, 25 CMR 131. In *Hayes* we said:

"Not every wrongful taking constitutes a violation of Article 121. See United States v Norris, 2 USCMA 236, 8 CMR 36. The intent to deprive the owner of his property, either permanently or temporarily, must include a *mens rea*. Therefore, the mere borrowing of an article of property without the prior consent of the owner does not make out either of the offenses defined in Article 121. Something more is required, and that something is criminal intention. Thus, if one visits the office of a friend, and, finding him absent, takes a book which he has come to borrow, leaves a note to that effect, and returns the book the next day, there is no intent to steal or misappropriate the book and, necessarily, no violation of Article 121. According to the evidence, under proper instructions the court-martial here could have acquitted the accused because of the absence of any criminal intent."

Suffice it for our purposes to say that the request misapplies the *Hayes* statement. *Hayes* pointed out ▇▇▇▇▇▇ ■ that a taking may be wrongful, but not constitute an offense under the Uniform Code if it is unaccompanied by a criminal intent. The requested instruction attempts to merge the separate elements of taking and intent. This is wrong. The law officer did not err in refusing to give this instruction.

Turning to the other parts of the instruction, it is contended the law officer erred to the accused's prejudice by instructing the ▇▇▇▇▇▇ ■ court-martial the accused could be convicted on the alternative basis of wrongfully taking or wrongful withholding of the money he received by means of the payment slips. In defining the elements of the offense, the law officer advised the court members, in part, that they must find

**325**

the accused "wrongfully took, obtained, or withheld" the money in each instance. The language of the instruction is that of Article 121 which defines the offense of larceny in terms intended to eliminate the former distinctions between larceny by trespass, in which the original taking was unlawful, and larceny by embezzlement, in which the property is lawfully acquired but then wrongfully converted. See United States v McFarland, 8 USCMA 42, 23 CMR 266.

Appellate defense counsel contend the theory of the prosecution was that the accused obtained the money by means of a false pretense as to his authority to draw partial pay. However, the argument continues, under the "withholding" instruction, the court-martial was authorized to convict the accused even if it found the taking was lawful, but that thereafter the accused decided not to make good on the financial obligation he incurred as a result of the partial payments. United States v Sicley, supra. In other words, say counsel, the withholding here is the withholding by a debtor of payment of his lawful debt to his creditor; and that, they maintain, is not the kind of withholding proscribed by Article 121; and, hence, under the instruction on withholding, the accused could have been convicted for a noncriminal act. United States v Sicley, supra; United States v Buck, 3 USCMA 341, 12 CMR 97. We need go no further than to observe that the case was tried, argued, and instructed on the theory that the accused wrongfully obtained the money, not that he wrongfully withheld it. If there were any errors in the inclusion of the alternative of withholding, it presented no fair risk of prejudice to the accused. See United States v Lane, 9 USCMA 369, 26 CMR 149.

The final assignment alleges that prejudicial error is present in an instruction which tends to shift the burden of proof from the Government to the accused. The instruction is as follows:

"The court is further advised that with respect to the element that the accused wrongfully obtained the property, obtaining money by false pre-tense is wrongful. A false pretense is a false representation of a past or existing fact. The pretense must be in fact false when made, *and the accused must have known it was false to the extent that he did not have an honest belief that it was true.* Although the pretense need not be the sole cause inducing the owner to part with his property, it is necessary that it be an effective and intentional cause of the obtaining." [Emphasis supplied.]

We considered the same instructions in two recent cases. In United States v Dinsmore, 11 USCMA 28, 28 CMR 252, we assumed, without deciding, that the instruction was erroneous, but concluded there was no possible prejudice to the accused because he had pleaded guilty to the lesser offense of wrongful appropriation and therefore judicially confessed to the wrongfulness of the taking. In United States v Schaible, 11 USCMA 107, 28 CMR 331, we concluded that if the instruction tended to shift the burden of proof, the tendency was overcome by the other instructions, which left no doubt that the court-martial knew the burden of proof rested upon the Government.

Support for the contention that the challenged instruction shifts the burden of proof is sought in Boatright v United States, 105 F2d 737 (CA8th Cir) (1939). There the trial judge told the jury that: "if you should find and believe from the evidence . . . that these defendants did not devise an artifice or scheme to defraud; that they did not make false or fraudulent representations . . . ; that if such were made there was no intention on their part to defraud . . . then it would be your duty to find either one or both of them not guilty." That instruction *called for an affirmative finding that the defendants did not make the representations charged as a condition for acquittal.* In the instant instruction, there is no indication whatever the court had to find affirmatively the accused entertained an honest belief that the fact he represented was true, as a condition for acquittal. The present instruction apparently is a paraphrase of

the discussion of false pretenses in the Manual for Courts-Martial, United States, 1951. Paragraph 200a(5) provides that the pretense must be false and "must be knowingly false in the sense that it is made without an honest belief in its truth." An instruction in the language of the Manual was before us in United States v Beasley, 3 USCMA 111, 11 CMR 111. We there said:

"The instructions . . . fully described the subject of false pretense; and particularly and more aptly explained that phase of the case relating to the belief of the accused as to the sufficiency of funds available to meet the payment of the checks upon presentation."

The instruction does no more than state the two essentials of falsity; namely, that the fact must be false, and that the falsity must be known to the accused. The underscored part merely emphasizes that the knowledge of falsity must be predicated upon the absence of an honest belief in the truth of the fact represented. While the thought is somewhat difficult to follow in the language used, in no way does the instruction imply that the accused must show he had an honest belief in the truth of the fact represented in order to be acquitted. In short, there is no intimation in the instruction as to who has the burden of proof. That matter was covered at length later in the instructions, and it was stressed repeatedly that the burden was on the Government. Accordingly, we find no merit in this claim of error.

The decision of the board of review is affirmed.

Judge LATIMER concurs.

FERGUSON, Judge (concurring in the result):

I concur in the result.

Following accused's conviction of four specifications of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, intermediate appellate authorities affirmed the findings of guilty but reduced the amount of confinement included in the adjudged sentence. We granted accused's petition for review on the question whether the law officer's instructions on the offense of larceny were prejudicially improper and whether it was equally erroneous to deny certain instructions requested by the defense counsel.

I have heretofore set forth my views on the vice inherent in the law officer's instructions expanding on the element of wrongfully obtaining money by means of a false pretense. United States v Dinsmore, 11 USCMA 28, 28 CMR 252. Thus, it is apparent I disagree fully with the conclusion of the Chief Judge that an instruction is not erroneous which requires only that the court members find the accused knew his pretense to be false "to the extent that he did not have an honest belief that it was true." Nevertheless, I am able to join in the result which he reaches, for I am sure the evidence in this record compellingly establishes accused's guilt. It is the settled law of this Court that instructional errors of this type are not prejudicial when the proof of guilt attains that high standard. United States v Schaible, 11 USCMA 107, 28 CMR 331; United States v Jenkins, 1 USCMA 329, 3 CMR 63; United States v Moynihan, 1 USCMA 333, 3 CMR 67; United States v Boone, 1 USCMA 381, 3 CMR 115; United States v Rhoden, 1 USCMA 193, 2 CMR 99.

Here, the accused was shown to have been the noncommissioned officer in charge of the Accounting Section of the Base Finance Office. It is unrefuted that he obtained the amounts of money charged on separate occasions by filling out pay vouchers, and representing that he either had, or would post the payments on his pay record card. The falsity of that representation is conclusively established, and the entries were finally made by a finance officer after the delicts were uncovered in an audit. Accordingly, it is apparent there remains no basis for a claim of prejudice in this record. United States v Schaible, supra.

With respect to the other instructional errors, I agree with the Chief Judge's rationale and discussion.

I, therefore, concur in the affirmance of the decision of the board of review.