UNITED STATES, Appellee

v

JAMES O. ROBERSON, Airman,
U. S. Navy, Appellant

12 USCMA 719, 31 CMR 305

No. 15,540

March 30, 1962

*Lieutenant Colonel M. G. Truesdale,* USMC, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Eric L. Keisman,* USNR.

*Commander Benjamin H. Berry,* USN, argued the cause for Appellee, United States. With him on the brief was *Captain James W. Grant,* USN.

## Opinion of the Court

FERGUSON, Judge:

The accused was tried by special court-martial and found guilty of numerous offenses in violation of the Uniform Code of Military Justice. These included nine specifications of larceny, in violation of Code, supra, Article 121, 10 USC § 921. He was sentenced to bad-conduct discharge, forfeiture of $42.00 per month for six months, reduction, and confinement at hard labor for six months. The convening authority approved the findings and sentence. The supervisory authority set aside the findings of guilty with respect to one of the alleged larcenies and another charge. He approved the sentence, and the board of review affirmed. We granted accused's petition for review on the issue:

"Whether the accused was prejudiced by the erroneous instruction

given by the court president on the issue of honest and reasonable mistake."

The evidence reveals that numerous items of personal property were taken from various owners without their permission. The majority of these items were located in pawnshops, and it was shown that accused either pledged them or had someone do it for him. Two pairs of allegedly stolen trousers were found in the accused's locker.

Favorable character evidence was adduced on accused's behalf, and he elected to testify on the merits. Denying the theft of any of the items involved in the present charges, he declared that he had received each of them from one "Billy Graves," a close friend, and had pawned them. He believed Graves had a legal right to the property. Evidence was adduced tending to establish "Graves'" existence and also tending to show that his surname may have been "Groves." There was also proof that "Groves" did not answer "Graves'" description and that accused did not seem interested in locating him.

A continuance was granted at the request of accused's nonlawyer counsel to investigate further the existence of "Graves" or "Groves," who had reputedly returned to the United States. When the court-martial reconvened seventeen days later, the defense noted that it had nothing further to offer the court.

The president of the court advised the members of the elements of the offenses charged and gave general advice on the effect of circumstantial evidence, possession of recently stolen property, and the meaning of the term "reasonable doubt." At the request of the defense counsel, he gave the following advice regarding mistake of fact:

". . . Also, a person who takes, obtains, or withholds the property of another, *believing honestly and reasonably, although mistakenly, that he or the person for whom he is acting has a legal right to acquire or retain the property is not guilty of an offense in violation of Article 121.* Ignorance or mistake of fact. Ex-

cept when otherwise provided, expressly or by implication, by the law denouncing the offense in question, an honest ignorance or mistake of fact will exempt a person from criminal responsibility for an offense requiring specific knowledge or intent if the ignorance or mistake of fact has the effect of precluding the formation of the specific knowledge or intent. Subject to the same exception, an honest ignorance or mistake of fact will be a complete defense to an offense involving a general criminal intent, except that an honest mistake of fact, alone, will not excuse criminal responsibility for any general criminal intent offense as to which by statute or custom, the mistake must be reasonable as well as honest. Thus, for example, with respect to the offenses of bigamy and negligent homicide, longstanding usage requires that an excusable mistake of fact be reasonable as well as honest; and with respect to negligent loss, damage or destruction of Government property, a similar requirement exists by season [sic] of statute." [Emphasis supplied.]

The initial portion of the quoted instruction is a verbatim extract from the Manual for Courts-Martial, United States, 1951, page 360. The second and concluding portion of the instruction, we are informed by the Government, is found in unofficial "changes" to the Manual, supra, promulgated by the Navy Department in November 1958 issue of *The JAG Journal.*

The United States readily concedes the president's instructions on mistake of fact were erroneous. We believe the concession eminently proper. United States v Rowan, 4 USCMA 430, 16 CMR 4; United States v Sicley, 6 USCMA 402, 20 CMR 118; United States v Nix, 11 USCMA 691, 29 CMR 507; United States v Pitts, 12 USCMA 106, 30 CMR 106. It argues, however, that the instructions were not prejudicial, as the evidence did not raise an issue of mistake of fact and, in any event, proof of accused's guilt was compelling.

We immediately reject the last con-

tention, for the assertion that accused's guilt was amply established simply gives no effect to his testimony that he did not take the items allegedly stolen but obtained them from "Graves," believing the latter had a legal right to them. We cannot "apply the law . . . to the evidence before us and resolve all factual issues in the case against the accused." United States v Black, 12 USCMA 571, 575, 31 CMR 157, 161. We deal here not with the legal sufficiency of the evidence to sustain the findings of guilty, but with the effect of the president's instructions. We cannot, therefore, disregard the accused's sworn denial of guilt.

The argument that the evidence before us does not raise an issue of mistake of fact misapprehends the problem with which we are confronted. The question raised by the accused's testimony is not mistake, but whether he in fact took the items alleged in the specifications. The Government's theory was based on the inferences to be drawn from accused's recent possession of stolen property. See United States v Hairston, 9 USCMA 554, 26 CMR 334. If, however, accused obtained the items from "Graves," he could not be guilty of larceny even if he knew that they were in fact stolen. United States v McFarland, 8 USCMA 42, 23 CMR 266. Thus, the question of the honesty of his belief concerning "Graves'" entitlement to the items is, under the facts here presented, immaterial.

That does not, however, mean that the erroneous instruction was not prejudicial. The president charged the court properly concerning the inferences to be drawn from the possession of recently stolen property. United States v Hairston, supra. When the advice concerning honest and reasonable belief was added, the accused's explanation of his possession of the allegedly stolen property was improperly circumscribed by permitting the court members to weigh it in light of whether he knew or should have known that "Graves" had stolen it. As noted above, this is a totally irrelevant circumstance for, granting the existence of guilty

knowledge, a permissive taking from "Graves" would not, regardless of accused's intent, constitute anything more than receiving stolen goods, in violation of Code, supra, Article 134, 10 USC § 934, an offense not charged and not included within the crime of larceny. United States v Mc- Farland, supra. In short, in view of his testimony, the accused was entitled to an instruction that he must be acquitted if the members had a reasonable doubt that he took the property from its respective owners, even if they were convinced that he had taken it from "Graves." When this advice was not given and the instruction on possession of stolen property and accused's explanation thereof was limited by considerations of honesty and reasonableness, it is apparent that the court-martial was left free to reach a verdict based upon a finding that accused obtained the items from "Graves" but either knew or should have known they had been stolen.

In sum, we believe that the president and counsel for both sides—none of whom were lawyers—tried the case and submitted it to the fact finders under an incorrect theory. As was stated in Perez v United States, 297 F2d 12 (CA 5th Cir) (1961), at page 15:

"It is elementary law that the defendant in a criminal case is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence. Tatum v United States, 190 F2d 612 (DC Cir 1951). A charge is erroneous which ignores a claimed defense with such a foundation. Hyde v United States, 15 F2d 816 (4th Cir 1926). The charge to which he is entitled, upon proper request, in such circumstances is one precisely and specifically, rather than merely generally or abstractly, points to his theory of defense . . . and one which does not unduly emphasize the theory of the prosecution, thereby deemphasizing proportionally the defendant's theory."

We are aware that, in this special court-martial, the instruction on honest

and reasonable mistake was specifically requested by defense counsel. But, as noted hereinbefore, the requested charge operated—even if unwittingly—improperly to circumscribe accused's principal defense. Under all the circumstances of this case, wherein all parties operated on an incorrect theory at the trial, we conclude there is a fair risk of a miscarriage of justice, absent proper advice to the triers of fact on the defense presented. Such being the case, we cannot permit the findings of guilty to be upheld.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Navy. The sentence may be reassessed on the remaining findings of guilty, or a rehearing may be had with respect to the larceny specifications and the penalty.

Chief Judge QUINN and Judge KILDAY concur.