UNITED STATES, Appellee

v

HOKE D. JONES, Airman First Class,
U. S. Air Force, Appellant

13 USCMA 635, 33 CMR 167

No. 16,401

April 12, 1963

*Lieutenant Colonel Quincey W. Tucker, Jr.,* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel E. Henderson, Jr., Colonel Joseph E. Krysakowski,* and *Lieutenant Colonel Wallace N. Clark.*

*Captain Richard T. Yery* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Emanuel Lewis.*

## Opinion

FERGUSON, Judge:

Tried before a general court-martial convened by the Commander, Sheppard Technical Training Center, Sheppard Air Force Base, Texas, the accused was found guilty of two specifications of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for two years. The convening authority approved the sentence. The board of review set aside the findings of guilty concerning one specification and affirmed only so much of the verdict relating to the remaining count as found that the accused, at the time and place alleged, stole two hundred pounds of beef, property of the United States, of a value of $86.00. It thereafter reassessed the penalty and fixed accused's punishment at bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for nine months. We granted accused's petition for review on the issue whether, in light of the defense evidence, the law

officer's instructions regarding the offense of larceny were adequate.

Accused was a storeroom clerk at Dining Hall Number 6, Sheppard Air Force Base. As such, it was his duty to receive, store, and issue various foodstuffs utilized by the hall. On January 25, 1962, he received a shipment of meat totalling six hundred eighty-eight pounds. On records which he was required to maintain, he noted the receipt of only four hundred eighty-eight pounds. The meat was packaged in marked, identifiable cartons, on which the date of expected troop consumption was also indicated.

On February 6, 1962, civilian police in nearby Wichita Falls, Texas, conducted a search of accused's automobile. Among other things, they found a carton containing two hundred pounds of frozen ground beef. The container markings indicated that the meat came from Dining Hall Number 6, and was intended to be consumed on January 26, 1962. The value of the meat was stipulated. Other evidence tended to

establish that accused, although not then on duty, had been seen at the dining hall on the night of February 6.

To rebut the obviously strong inferences arising from the foregoing circumstances, accused elected to testify in his own behalf. He admitted that he had falsified dining hall records, but declared he did so at the instruction of his supervisor in order to account for an overage of ground beef which was then on hand. He conceded his alteration of the records actually compounded the problem by indicating a larger overage but said, at the time, he was not thinking clearly.

Concerning the presence of the meat in his automobile, Jones further testified that, on February 6, he met a shoeshine boy, one Green, in a local billiard parlor. Green told him he had some meat to sell, and if accused would dispose of it for him, they would divide the proceeds. Realizing the meat was probably stolen, accused agreed. Accused visited several prospective customers in the immediate vicinity, but was unable to sell the meat. Upon returning to the poolroom, he found Green had placed the meat in his car.

Green also appeared as a witness. He corroborated accused's testimony and declared he had, in turn, purchased the meat from a stranger, who had informed him he was "shipping out." Green did not have the necessary funds to pay this individual and agreed to settle with him later.

The law officer's instructions regarding the elements of the charged larcenies are as follows:

"The court is advised that, to find the accused guilty of these offenses, it must be satisfied by legal and competent evidence beyond a reasonable doubt, as to each Specification:

"That, at the time and place alleged, the accused *wrongfully took, obtained, or withheld from the possession of the true owner the property described in the specification;*

"That such property belonged to the United States Air Force, as alleged;

"That such property was of the value alleged, or of some lesser value, in which case the finding should be in the lesser amount; and

"That the taking, obtaining, or withholding by the accused was with the intent permanently to deprive or defraud another person of the use and benefit of property or permanently to appropriate the same to his own use or the use of any person other than the true owner." [Emphasis supplied.]

To the foregoing, the law officer added the statutory charge, a general instruction on credibility of witnesses, and advice concerning the court's responsibility for determining accused's guilt in fact. No effort was made in any way to draw together the positions of the parties to the trial in a coherent, meaningful framework by which the court members might be guided to an intelligently conceived verdict.

In United States v Acfalle, 12 USCMA 465, 31 CMR 51, we referred to the need for the law officer to tailor his instructions to the factual situation presented by the evidence. There, we said, at page 470:

"There is nothing novel in the doctrine which we apply to the record before us. The need for tailoring instructions to the matters in evidence has been recognized on many occasions. United States v Weems, 3 USCMA 469, 13 CMR 25; United States v Floyd, 2 USCMA 183, 7 CMR 59; United States v Ginn, 1 USCMA 453, 4 CMR 45; 53 Am Jur, Trial, § 573. See also United States v Thompson, 12 USCMA 438, 30 CMR 24. Indeed, one of the armed services has long since recognized the validity of this principle. Department of the Army Pamphlet No. 27–9, Military Justice Handbook, The Law Officer, April 1958, page 5."

More recently, in United States v Smith, 13 USCMA 471, 33 CMR 3, a unanimous Court declared:

"Lest there be room for any uncertainty in the minds of anyone, therefore, we deem it appropriate to elaborate on the sense in which this Court

has used the terms 'tailor,' and 'tailoring.' *What is contemplated is the affirmative submission of the respective theories, both of the Government and of the accused on trial, to the triers of fact, with lucid guideposts, to the end that they may knowledgeably apply the law to the facts as they find them.* A liberal application of this approach will avoid the possible pitfalls that may attend instructing on barren and abstract legal principles in a vacuum. In any case, it surely benefits both parties to a proceeding, and obviously enhances the quest for truth and justice in a truly enlightened atmosphere." [Emphasis supplied.]

A cursory examination of the law officer's advice, set out above, establishes that he made no real attempt to submit the case to the court-martial in light of the respective theories of the prosecution and defense. Indeed, his advice on the elements of larceny was completely *in vacuo,* and by its use of the alternative terms, "took, obtained, or *withheld"* (emphasis supplied), permitted the court-martial to consider the case either as common-law larceny, obtaining the property by false pretenses, embezzlement, or, as hereinafter noted, receiving stolen goods.

It is this last circumstance which, in light of the facts in this record, leads to the conclusion that the instructions offered prejudicially inadequate guideposts to the fact finders. As the Government here contends, this Court has heretofore held that it was not prejudicial error for a law officer to submit a larceny case to a court with alternative instructions on taking, obtaining, and withholding. United States v Nix, 11 USCMA 691, 29 CMR 507; United States v Smith, 11 USCMA 321, 29 CMR 137; United States v Lane, 9 USCMA 369, 26 CMR 149. In each such case, however, the holding of the Court was carefully limited to a finding that instructing in the alternative "presented no fair risk of prejudice to the accused." United States v Smith, supra, at page 326; United States v Nix, supra, at page 696; United States v Lane, supra, at page 372.

In the record now before us, the case for the United States rested primarily upon accused's possession of Government property originating from his dining hall. Accused conceded that possession, but claimed that he obtained the meat from Green for the purpose of resale. Green corroborated his testimony. In light of this evidence, and in absence of further elucidation upon applicable principles of law, the court members may have determined to accept accused's story of dealing in stolen property and to convict him upon the theory of "withholding" the beef from the Government, once it came into his possession. Yet findings of guilty of larceny by "withholding" cannot be premised upon evidence that accused is guilty of receiving stolen property. United States v Welker, 8 USCMA 647, 25 CMR 151; United States v McFarland, 8 USCMA 42, 23 CMR 266.

This record is not dissimilar to that in United States v Roberson, 12 USCMA 719, 31 CMR 305. There, the accused also defended against a charge of larceny by asserting that he had, in fact, obtained the allegedly stolen property from one Graves, believing the latter to have a legal right to the property. The president of Roberson's special court-martial advised the members of the inferences which might be drawn from the accused's possession of recently stolen property and, further, an honest and reasonable belief that the items belonged to Graves, from whom he had allegedly obtained them, was a proper defense. We reversed, declaring that the president misapprehended the issues before the court-martial, and stating, at page 722:

". . . The question raised by the accused's testimony is not mistake, but whether he in fact took the items alleged in the specifications. *The Government's theory was based on the inferences to be drawn from accused's recent possession of stolen property. See United States v Hairston, 9 USCMA 554, 26 CMR 334. If, however, accused obtained the items from 'Graves,' he could not be guilty of larceny even if he knew that they were in fact stolen. United*

*States v McFarland, 8 USCMA 42, 23 CMR 266.* Thus, the question of the honesty of his belief concerning 'Graves' ' entitlement to the items is, under the facts here presented, immaterial.

"That does not, however, mean that the erroneous instruction was not prejudicial. The president charged the court properly concerning the inferences to be drawn from the possession of recently stolen property. *United States v Hairston, supra.* When the advice concerning honest and reasonable belief was added, the accused's explanation of his possession of the allegedly stolen property was improperly circumscribed by permitting the court members to weigh it in light of whether he knew or should have known that 'Graves' had stolen it. As noted above, this is a totally irrelevant circumstance for, granting the existence of guilty knowledge, a permissive taking from 'Graves' would not, regardless of accused's intent, constitute anything more than receiving stolen goods, in violation of Code, supra, Article 134, 10 USC § 934, an offense not charged and not included within the crime of larceny. *United States v McFarland, supra. In short, in view of his testimony, the accused was entitled to an instruction that he must be acquitted if the members had a reasonable doubt that he took the property from its respective owners, even if they were convinced that he had taken it from 'Graves.' When this advice was not given and the instruction on possession of stolen property and accused's explanation thereof was limited by considerations of honesty and reasonableness, it is apparent that the court-martial was left free to reach a verdict based upon a finding that accused obtained the items from 'Graves' but either knew or should have known they had been stolen."* [Emphasis supplied.]

In like manner, the instructions in the present case permitted accused's conviction upon an incorrect theory of the law. *United States v Welker, supra; United States v McFarland, supra.*

Absent a properly tailored advice, "there is a fair risk of a miscarriage of justice, . . . [and] we cannot permit the findings of guilty to be upheld." *United States v Roberson, supra,* page 723.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Air Force. A rehearing may be ordered on the specification as modified by the board.

KILDAY, Judge (concurring in the result):

I concur in the result reached by Judge Ferguson; however, I believe it necessary to express some different reasons for reaching that result.

I do not believe that the inclusion of the word "withholding," in the context given in the law officer's instructions, was error prejudicial to the substantial rights of the accused. *United States v Nix,* 11 USCMA 691, 29 CMR 507; *United States v Smith,* 11 USCMA 321, 29 CMR 137; *United States v Lane,* 9 USCMA 369, 26 CMR 149. Neither do I believe this case identical to *United States v Roberson,* 12 USCMA 719, 31 CMR 305, wherein the instructions on the inferences to be drawn from the possession of recently stolen property were given but were unduly circumscribed. But I do agree as to the desirability of tailoring instructions sufficiently to affirmatively submit the respective theories of Government and defense. *United States v Smith,* 13 USCMA 471, 33 CMR 3.

This view does not place upon the law officer in every case, and under all circumstances, the burden of, *sua sponte,* elaborating upon minimal instructions in that regard. In some cases, absent a defense request for amplification or elaboration, such instructions may be deemed adequate. *United States v Soukup,* 2 USCMA 141, 7 CMR 17; *United States v Felton,* 2 USCMA 630, 10 CMR 128; *United States v Phillips,* 3 USCMA 137, 11 CMR 137; *United States v Johnson,* 3 USCMA 447, 13 CMR 3; *United States v Kloh,* 10 USCMA 329, 27 CMR 403. And, in the case at bar, individual defense counsel

**639**

made no effort to secure amplification or clarification, and apparently was satisfied with the instructions on this phase of the matter. However, it does appear to me that the facts in this particular case required the law officer to include in his instructions the exculpatory nature of the accused's explanation of the possession of property recently stolen. The Government relied upon appellant's possession of recently stolen property to sustain its charge of larceny, and the instructions were minimal, with no instruction being given as to the inferences permissible therefrom. The testimony of the appellant and his witness Green, as to the manner in which appellant came into possession of that property, was of such a nature as to have required that the court be fully instructed on the effect of accused's explanation. Receiving stolen property, knowing the same to have been stolen, is not included in the offense of larceny. United States v McFarland, 8 USCMA 42, 23 CMR 266; United States v Roberson, supra. And, the reasonable character of the explanation was for the determination of the court-martial, under proper instructions. As stated in Young v United States, 309 F2d 662 (CA DC Cir) (1962):

". . . However implausible, unreliable or incredible only the jury had the right to make the evaluation of West's testimony. The evidence of a simple assault [appellant was convicted of assault with intent to commit robbery] cannot be regarded as strong or convincing and perhaps the source could well be regarded as of dubious reliability, but the question of its weight and credibility was for the jury. . . . The ruling denying the lesser included offense instruction necessarily involved an appraisal of that evidence and West's credibility by the District Judge but the trier cannot withdraw that appraisal from the jury. Kinard v United States, 68 App DC 250, 96 F2d 522 (1938). See also Stevenson v United States, 162 US 313, 323, 16 S Ct 839, 40 L ed 980 (1896)."

QUINN, Chief Judge (dissenting):

This case was tried and defended on a simple straightforward basis which was unmistakably understood by all persons at trial. The question was, "did the accused falsify the stock records and steal the meat, or did he buy it from an unidentified stranger?" As the issue was developed and submitted to the court-martial, I am unable to understand how the inclusion of the word "withheld" in the law officer's instructions could suggest to the court-martial that it could convict the accused because he kept the meat knowing it was stolen from the Government. It is most significant that the cryptic markings on the meat cartons did not, by themselves, even hint at Government ownership; this relationship was established by other evidence. The accused himself admitted at trial that he did not see the markings and learned the meaning of them "[o]nly from what . . . [he] heard in court today." Neither the theory of the Government nor the theory of the defense, therefore, had anything to do with "withholding." The law officer should have left the word out of his instructions, but the inclusion of it did not prejudice the accused. United States v Moynihan, 1 USCMA 333, 3 CMR 67.

The accused's story is on a par with the tale told by the Irishman who, right after the first World War, boasted that he had "swum" the shark-infested waters from Key West to Cuba. His friend deprecated his assertions, saying that he'd have been swallowed long before he reached Cuba. "Well, I wasn't," said Pat. "I just painted on my bathing suit, across my chest, the words, 'England won the war.' Not even a shark would swallow that." In my opinion, no reasonable man could swallow the accused's story in this case. I would affirm the decision of the board of review.